# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JONATHAN TORREY DUNCAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:19CV353 |
| | ) | |
| WILLIAM T. SCHATZMAN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter comes before the Court on Defendants Correct Care Solutions, LLC,[1] Rebekah Dixon, Amanda Jennings, John Rancy, and Alan Rhoades' (hereinafter "Moving Defendants") motion to dismiss Plaintiff Jonathan Torrey Duncan's Third Amended Complaint. (Docket Entry 61.) For the reasons set herein, the Court recommends that the motion be granted.

**I. BACKGROUND**

Plaintiff, a *pro se* litigant, initiated this action on March 29, 2019 by filing a complaint. (Docket Entry 1). He subsequently filed two amended complaints. (Docket Entries 32, 38.) Thereafter, on October 15, 2020, Plaintiff filed a Third Amended Complaint. (Docket Entry 59.) With regard to the Moving Defendants, Plaintiff raises against them claims of negligence

---

[1] Defendant Correct Care Solutions, LLC is listed in the docket as Wells Path, LLC. (*See* Docket Entry 61.) However, the Court refers to this Defendant as Correct Care Solutions to reflect how the party has referred to itself in its filings. (*See id.*, Docket Entry 62.)

and Fourteenth Amendment deliberate indifference.² (*Id.* ¶¶ 184, 185, 192-98, 202-03.) The Third Amended Complaint alleges the following facts:

Plaintiff was incarcerated as a federal pretrial detainee at Forsyth County Law Enforcement and Detention Center (FCLEDC) between May 3, 2016 and August 30, 2016. (*Id.* ¶¶ 3, 29, 163-64.) Defendant Correct Care Solutions, LLC ("Correct Care Solutions") contracted with Forsyth County and the county sheriff to provide medical care to detainees at FCLEDC. (*Id.* ¶ 12.) Defendant Jennings was the Supervisor of Nurses at FCLEDC. (*Id.* ¶ 14.) Defendants Rancy and Rhoades were Nurse Practitioners at FCLEDC. (*Id.* ¶¶ 15, 16.) Defendant Dixon was a Licensed Nurse Practitioner. (*Id.* ¶ 15.)

On April 27, 2016, Plaintiff was tackled during his arrest which resulted in an injury to his left leg and knee. (*Id.* ¶ 28.) Upon arrival at FCLEDC on May 3, 2016, Plaintiff was assigned the top bunk in his cell. (*Id.* ¶ 29.) That day, as he climbed the top bunk, he left knee buckled and Plaintiff fell, aggravating the pain in his knee. (*Id.* ¶¶ 30-32.) Plaintiff submitted a sick call request that same day, noting that he had a torn left knee ligament and requesting a bottom bunk. (*Id.* ¶ 33.) On May 4, 2016, a report from Northern Surry Hospital, which included information that Plaintiff was diagnosed with internal derangement of his left knee, was placed in Plaintiff's medical records at FCLEDC. (*Id.* ¶ 34; Ex. A, Docket Entry 59-1 at 7.) That same day, licensed nurse practitioner Twonda White triaged Plaintiff's sick call but

---

² Specifically, Plaintiff raises claims of deliberate indifference in violation of the Fourteenth Amendment against all Moving Defendants. (Third Amended Complaint ¶¶ 184, 192-198, 202-203.) Of them, however, he only raises a claim of negligence against Defendant Dixon. (*Id.* ¶ 185.) While *pro se* filings must be liberally construed, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), Plaintiff explicitly details the claims he intends to raise against each defendant in this action (Third Amend. Compl. ¶¶ 177-206.) The Court thus will not read into the Third Amended Complaint claims of negligence against the other Moving Defendants.

2

did not see or examine him. (Third Amended Complaint ¶¶ 21, 35, 36.) Plaintiff's pain increased, so he submitted another sick call on May 5, 2016. (*Id.* ¶ 38.) White again failed to see him but did provide him a Tylenol prescription for two days. (*Id.* ¶¶ 38-39.)

At some point, Plaintiff was also prescribed Mobic, a pain-relief medication. (*See id.* ¶ 41.) Over time, the Mobic and Tylenol prescriptions became less effective at managing Plaintiff's pain. (*Id.*) On May 24, 2016, Plaintiff received a referral for an appointment with the Chronic Care Clinic and an x-ray. (*Id.* ¶ 43.) On May 25, 2016, Defendants Rancy and Dixon examined Plaintiff at the Chronic Care Clinic. (*Id.* ¶ 44.) Defendant Rancy prescribed Plaintiff Tramadol for a ten-day period, at which point Plaintiff would need to resume use of Tylenol and Mobic. (*Id.* ¶ 46.) Defendant Rancy informed Plaintiff that policy prevented him from prescribing Tramadol for a longer period of time.[3] (*Id.*) Defendant Rancy also prescribed Plaintiff an additional blanket to elevate his left leg but denied Plaintiff's x-ray for cost-efficiency purposes. (*Id.* ¶¶ 45, 47.)

On May 31, 2016, Defendant Rancy diagnosed Plaintiff with chronic neurological pain disorder despite not seeing or examining Plaintiff. (*Id.* ¶ 51.) Plaintiff was not seen by medical staff for the next two months despite repeatedly filing complaints regarding "increased pain, debilitation, and ineffective pain relief medications [(i.e. Tylenol and Mobic)] for his severe and excruciating left leg and knee pain. (*Id.* ¶ 53.) Plaintiff was also not examined to determine if the Tramadol was effective for his pain relief. (*Id.* ¶ 54.)

---

[3] Plaintiff alleges that Defendant Correct Care Solutions has a policy of restricting Tramadol use to no more than fourteen days. (Third Am. Compl. ¶ 48.)

On June 4, 2016, an unknown defendant failed to dispense Tylenol to Plaintiff, and Plaintiff did not receive Tylenol for the next twenty-one days. (*Id.* ¶ 55.) Because the Mobic alone was ineffective at pain relief, Plaintiff submitted a sick call on June 9, 2016. (*Id.* ¶ 56.) Two days later, he was seen by A. Swallie, a licensed nurse practitioner. (*Id.* ¶¶ 19, 56.) Plaintiff informed Swallie that his pain had increased, that he was not receiving Tylenol, and that the Mobic alone was ineffective. (*Id.* ¶ 57.) However, Swallie "denied or delayed providing [Plaintiff] Tylenol without a medical justification and failed to carry [out] medical orders that allowed Plaintiff to have [Tylenol] for the treatment of his serious pain." (*Id.* ¶ 58.) Swallie only carried out a cursory examination and said that she would refer Plaintiff to another provider. (*Id.* ¶ 59.) However, Plaintiff was not seen by the provider to whom he was referred. (*Id.* ¶ 61.)

On July 26, 2016, Plaintiff submitted another sick call. (*Id.* ¶ 62.) He noted his inability to sleep due to his knee pain as well as stiffness and buckling of the knee. (*Id.*) On July 28, 2016, he was seen by Defendant Dixon. (*Id.*) However, Defendant Dixon referred him to an unknown provider and otherwise did not provide any care. (*Id.* ¶ 63.) Additionally, Defendant Dixon did not examine his knee and Plaintiff was never seen by the provider to whom he was referred. (*Id.* ¶ 64-66.)

On July 30, 2016, a correctional officer confiscated the extra blanket that had been prescribed to Plaintiff despite Plaintiff presenting him the form that authorized his possession of the item. (*Id.* ¶ 67, 70, 71.) The same day, at 3:00 p.m. Plaintiff requested a replacement blanket and his asthma inhaler from a correctional officer. (*Id.* ¶ 77.) At approximately 4:30 p.m., Wendy Hogan, a licensed nurse practitioner, responded to Plaintiff and provided an

4

emergency medical examination. (*Id.* ¶¶ 78-79.) Plaintiff informed her that his pain had increased as a result of the confiscation of his extra blanket and that he felt a tightness in his chest that had dissipated by the time Hogan arrived. (*Id.* ¶ 79.) Hogan checked Plaintiff's blood pressure and noted that it was elevated at 142/90. (*Id.* ¶ 80.) She told Plaintiff that he just need[ed] to calm down" and did provide further medical assistance. (*Id.* ¶ 81.) When Plaintiff asked for a replacement blanket, Hogan refused, saying "Dixon wrote it, so she can take it." (*Id.* ¶ 82.) Plaintiff submitted another sick call requesting his blanket. (*Id.* ¶ 85.) He was informed by a correctional officer the next day that Plaintiff' request for an extra blanket had been denied by a more senior correctional officer. (*Id.* ¶ 86.) Plaintiff filed a grievance and did not receive the blanket for another four days. (*Id.* ¶ 88-90.)

Approximately two days later, Plaintiff's pan increased despite his use of Tylenol and Mobic. (*Id.* ¶ 91.) Plaintiff submitted another sick call on August 6, 2016, noting the increase in pain. (*Id.* ¶ 92.) Plaintiff received a note from K. Turpin, a licensed nurse practitioner, that his sick calls had been received but was never examined. (*Id.* ¶¶ 93-94.) Plaintiff was referred to another provider but was never seen by that person. (*Id.* ¶ 95.)

On August 9, 2016, Plaintiff filed an inmate request concerning his previous sick call requests. (*Id.* ¶ 96.) Defendant Jennings received the request but did not act. (*Id.* ¶¶ 97, 98.) On August 10, 2016, Plaintiff submitted another sick call regarding pain so severe that he had difficulty walking. (*Id.* ¶ 111.) Plaintiff never received a response for other sick calls he filed on August 8, 2016, August 12, 2016, August 13, 2016, and August 17, 2016. (*Id.* ¶¶ 113, 115-25, 131-35.)

5

On August 19, 2016, Plaintiff attended a 90-day follow-up appointment at the Chronic Care Clinic with Defendant Rhoades. (*Id.* ¶ 137.) Plaintiff informed Defendant Rhoades of severe pain in his left leg and knee that was gradually increasing as well as occasional buckling of the knee. (*Id.* ¶ 139.) Defendant Rhoades only took a few notes and did not examine Plaintiff. (*Id.* ¶¶ 140-41.)

On August 25, 2016, Plaintiff submitted a sick call concerning the buckling of his knee while walking but was never seen by medical personnel. (*Id.* ¶ 147.)

On August 31, 2016, Plaintiff was transferred to Orange County Jail. (*Id.* ¶ 164.) His knee continued to deteriorate between that time and March 2018. (*Id.* ¶ 168.) Between November 2016 and June 2017, Plaintiff received multiple x-ray examinations that showed severe osteoarthritis. (*Id.* ¶ 169.) A July 2017 MRI of his left knee revealed a partial tear of the anterior cruciate ligament (ACL), tear of the posterior horn of the medial and lateral meniscus, and a benign tumor resulting from pigmented villonodular synovitis.[4] (*Id.* ¶ 170.) Plaintiff underwent two surgeries to repair the tears and remove the tumor in January and March 2018. (*Id.* ¶¶ 173, 174.)

Moving Defendant filed the instant motion to dismiss the Third Amended Complaint and an accompanying memorandum on November 4, 2020. (Docket Entries 61, 62.) Plaintiff filed a response on March 9, 2020. (Docket Entry 71.)

---

[4] Plaintiff alleges that his pigmented villonodular synovitis "involved the tendons that [affect] the stability and support of the affected joint, that cause an increase of pain, swelling and instability in gait. It is a progressive disease, that slowly worsens, and can lead to bone damage." (Third Am. Compl. ¶ 172.)

## II. DISCUSSION

Moving Defendants have filed a motion to dismiss pursuant to Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure. (Docket Entry 61.) A motion to dismiss under Rule 12(b)(6) for failure to state a claim should be granted if the complaint does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In other words, the factual allegations must "be enough to raise a right to relief above the speculative level." *Id.* at 555. "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (quoting *Twombly*, 550 U.S. at 570). As explained by the United States Supreme Court:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted).

A Rule 12(b)(6) motion tests the sufficiency of a complaint and "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Accordingly, a court should "assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *E. Shore Mkts. Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). Although the truth of the facts alleged is assumed,

7

courts are not bound by the "legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Id.* Pro se complaints are to be liberally construed in assessing sufficiency under the Federal Rules of Civil Procedure. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). However, even under this liberal construction, "generosity is not a fantasy," and the court is not expected to plead a plaintiff's claim for him. *Bender v. Suburban Hosp., Inc.*, 159 F.3d 186, 192 (4th Cir. 1998).

A motion to dismiss pursuant to Rule 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8(a)(2). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," so as to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests . . . ." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Rule 8 does not, however, unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Fair notice is provided by setting forth enough facts for the complaint to be "plausible on its face" and "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555-56 (internal citations omitted). "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Id.* at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

Moving Defendants make two arguments in support of their motion to dismiss. First, they contend that Plaintiff's negligence claims are actually claims of medical malpractice and that Plaintiff has failed to sufficiently plead those claims against them. (Docket Entry 62 at 5-7.) Second, they argue that Plaintiff has failed to sufficiently plead claims of deliberate indifference against them. (*Id.* at 7-11.)

8

## A. Negligence and Medical Malpractice

Under North Carolina law,

> [w]hether an action is treated as a medical malpractice action or as a common law negligence action is determined by [state] statutes, which define a medical malpractice action as a civil action for damages for personal injury or death arising out of the furnishing or failure to furnish professional services in the performance of medical, dental, or other health care by a health care provider.

*Smith v. Serro,* 185 N.C. App. 524, 529, 648 S.E.2d 566, 569 (N.C. Ct. App. 2007) (citing N.C. Gen. Stat. § 90–21.11 (2005)) (internal quotation marks and alterations omitted). A plaintiff alleging medical malpractice must comply with North Carolina Rule of Civil Procedure 9(j) which requires a plaintiff to include in his complaint an assertion that that an expert in the same field reviewed the medical care at issue and is willing to testify that the medical care did not comply with the applicable standard of care. *See* N.C. R. Civ. P. 9(j). Failure to comply with Rule 9(j) is grounds for dismissal. *See Littlepaige v. United States*, 528 Fed. App'x. 289, 292 (4th Cir. 2013) (finding in a Federal Tort Claims Act case, "that, where applicable, a Rule 9(j) certification is a mandatory requirement for a plaintiff in a North Carolina medical malpractice action."); *Boula v. United States*, No. 1:11cv366, 2013 WL 5962935, at *2 (M.D.N.C. Nov. 7, 2013); *Moore v. Pitt Cty. Mem. Hosp.*, 139 F. Supp. 2d 712, 713-14 (E.D.N.C. 2001). The only exception to this rule is where "[t]he pleading alleges facts establishing negligence under the existing common-law doctrine of *res ipsa loquitur*." Rule 9(j)(3).

"[T]he doctrine of *res ipsa loquitur* . . . permits a fact finder 'to infer negligence from the mere occurrence of the accident itself' based on common knowledge or experience." *Wright v. United States*, 280 F. Supp. 2d 472, 481 (M.D.N.C. 2003) (quoting *Diehl v. Koffer*, 140 N.C. App.

375, 378, 536 S.E.2d 359, 362 (N.C. Ct. App. 2000)). This doctrine "is 'addressed to those situations where the facts or circumstances accompanying an injury by their very nature raise a presumption of negligence on the part of [the] defendant.'" *Wood v. United States*, 209 F. Supp. 3d 835, 845 (M.D.N.C. 2016) (brackets in original) (quoting *Robinson v. Duke Univ. Health Sys.*, 229 N.C. App. 215, 224, 747 S.E.2d 321, 329 (N.C. Ct. App. 2013)). "The doctrine of *res ipsa loquitur* applies when (1) direct proof of the cause of an injury is not available, (2) the instrumentality involved in the accident is under the defendant's control, and (3) the injury is of a type that does not ordinarily occur in the absence of some negligent act or omission." *Alston v. Granville Health Sys.*, 221 N.C. App. 416, 419, 727 S.E.2d 877, 879 (N.C. Ct. App. 2012) (citation omitted); *see also Muhammad v. United States*, No. 5:11-CT-3126-FL, 2012 WL 3957473, at *6 (E.D.N.C. Sept. 10, 2012).

Given in part the complexity and inherent risks of most medical treatments, *see Wright*, 280 F. Supp. 2d at 481, *res ipsa loquitur* "rarely applies in medical malpractice actions," *Wood*, 209 F. Supp. 3d at 845. Instead, it remains reserved for "medical malpractice actions in which the 'common knowledge, experience and sense of laymen qualifies them to conclude that [the relevant] medical injuries are not likely to occur if proper care and skill is used.'" *Wright*, 280 F. Supp. 2d at 482 (quoting *Grigg v. Lester*, 102 N.C. App. 332, 335, 401 S.E.2d 657, 659 (N.C. Ct. App. 1991)). These situations often include "injuries involving gross negligence, such as surgical instruments left in the patient's body, and injuries obviously remote from the site of a surgery." *Id.* at 481 (citations omitted).

Moving Defendants argue that all claims of negligence against them by Plaintiff are actually claims of medical malpractice. (Docket Entry 62 at 5-6.) Furthermore, because

10

Case 1:19-cv-00353-CCE-JLW   Document 74   Filed 08/31/20   Page 10 of 17

Plaintiff has failed to include Rule 9(j) certification or allege *res ipsa loquitor* as required in North Carolina medical malpractice actions, these claims must be dismissed. (*Id.* at 6-7). Therefore, the Court merely considers here whether any of Plaintiff's purported negligence claims are in fact claims of medical malpractice.

Despite Moving Defendants' brief suggesting that Plaintiff raises negligence claims against all Moving Defendants, Plaintiff only raises a claim of negligence against Defendant Dixon. (Third Am. Compl. ¶ 185.) He argues that she failed to provide an alternative treatment in lieu of Plaintiff's confiscated blanket. (*Id.*) This claim arises out of a "failure to furnish professional services in the performance of medical . . . care by a health care provider." *Smith*, 185 N.C. App. at 529. It is therefore a claim of medical malpractice. Plaintiff makes no claim that he has received certification under Rule 9(j) but appears to argue that *res ipsa loquitur* applies because "the issue is not highly [scientific] or technical." (Docket Entry 71 at 8-9.) This argument is without merit. The decision to essentially cease a patient's prescription raises questions of treatment that are not "within the common knowledge or experience of a jury." *Diehl*, 140 N.C. App. at 380 (discussing the applicability of the doctrine to the surgical procedure for gallbladder removal). Having failed to receive Rule 9(j) certification or state a claim of negligence under *res ipsa loquitur*, Plaintiff's medical malpractice claim against Defendant Dixon (styled as a negligence claim) should be dismissed.

### B. Deliberate Indifference of a Serious Medical Need

Plaintiff raises claims of deliberate indifference against all Moving Defendants. (Third Am. Compl. ¶¶ 184, 192-98, 202-03.) Plaintiff was a pretrial detainee, thus "the standard of care is governed by the due process clause of the fourteenth amendment rather than the eighth

amendment's prohibition against cruel and unusual punishment." *Hill v. Nicodetnus*, 979 F.2d 987, 990-91 (4th Cir. 1992) (citing *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983)). "The due process rights of a pretrial detainee are at least as great as the [E]ighth [A]mendment protections available to the convicted prisoner." *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988). As such,

> when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause.

*DeShaney v. Winnebago Cty. Dep't of Soc. Sens.*, 489 U.S. 189, 200 (1989).

"Historically, the United States Court of Appeals for the Fourth Circuit has applied the same analysis to Section 1983 deliberate indifference claims under the Fourteenth Amendment as under the Eighth Amendment." *Durand v. Charles*, No. 1:16CV86, 2018 WL 748723, at *11 (M.D.N.C. Feb. 7, 2018) (citation omitted). "The plaintiff must demonstrate that the officers acted with 'deliberate indifference' (subjective) to the inmate's 'serious medical needs' (objective)." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). A medical need is serious if it "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (internal quotations omitted). "An officer is deliberately indifferent only when he 'knows of and disregards' the risk posed by the serious medical needs of the inmate." *Id.* (citation omitted).

12

"Prisoners' rights to adequate medical care related to prisoners' physical and mental health claims are identical." *DePaola v. Schilling*, No. 7:15CV00403, 2019 WL 3417359, at *7 (W.D. Va. Mar. 18, 2019) (citing *Bowring v. Godwin*, 551 F.2d 44, 47 (4th Cir. 1977)). The Fourth Circuit also recognizes that "[d]eliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999). Similarly, "[d]isagreements between an inmate and a physician over the inmates proper medical care does not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citation omitted). *See also Simmons v. Surry Cty. Sheriff Dep't*, No. 1:09CV94, 2010 WL 1418319, at *4 (M.D.N.C. Apr. 2, 2010) (unpublished) (same); *McKnight v. James*, No. 1:08CV406, 2009 WL 806584, at *4 (M.D.N.C. Mar. 27, 2009) (unpublished) (same).

Moving Defendants argue that Plaintiff has failed to allege sufficient facts that suggest that he had a serious medical need. (Docket Entry 61 at 8-9.) The Court disagrees. Plaintiff suffered a knee injury that had been diagnosed as internal derangement of the knee. (Ex. A, Docket Entry 59-1 at 7.) After his incarceration at FCLEDC, he received additional diagnoses of "a partial tear of the [ACL], tear of the posterior horn of the medial and lateral meniscus" and a benign tumor resulting from his pigmented villonodular synovitis. (Third Am. Compl. ¶ 170.) Plaintiff further alleges that pigmented villonodular synovitis is a progressive disease that can lead to bone damage. (*Id.* ¶ 172.) Plaintiff also notes that his knee occasionally buckled. (*Id.* ¶¶ 30, 62, 139, 147.) Plaintiff's knee injury thus constitutes a serious medical need. *See Nellon v. Hampton*, No. 1:15CV592, 2016 WL 6426382, at *3 (M.D.N.C. Oct. 31,

2016) (collecting cases in support of the proposition that a torn ACL is an objectively serious medical need), *adopted by*, 2016 WL 11373412 (M.D.N.C. Dec. 12, 2016).

Moving Defendants also argue that Plaintiff has failed to allege sufficient facts that suggest that Moving Defendants acted with deliberate indifference to his medical needs. The Court concludes they are correct. Accordingly, all claims of deliberate indifference against Moving Defendants should be dismissed.

1. Defendant Dixon

Plaintiff argues that Defendant Dixon was deliberately indifferent to his knee injury when she "authorize[d], sanction[ed] or approve[d] the confiscation of Plaintiff's [prescription blanket used] to elevate his left leg, without providing alternative treatment" and thus failing to follow Plaintiff's prescription. (Third Am. Compl. ¶ 184.) Here, Plaintiff alleges Defendant Dixon, along with Defendant Rancy examined Plaintiff on May 25, 2016. (Third. Am. Compl. ¶¶ 43-44.) That same day, Defendants Rancy and/or Dixon prescribed Plaintiff the blanket for leg elevation.[5] (*Id.* ¶¶ 45, 184.) The seizing of the blanket, if indeed ordered or sanctioned by Defendant Dixon, functionally served as the termination of a prescription.[6] Whether termination of that prescription was appropriate is a "[question] of medical judgment . . . not subject to judicial review." *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975.) Accordingly,

---

[5] Plaintiff attributes the prescription to Defendant Rancy in one part of the Third Amended Complaint and Defendant Dixon in the other. (Third Am. Compl. ¶¶ 45, 184.) Defendant Rancy is named in the medical report documenting Plaintiff's May 25, 2016 visit with Defendants Rancy and Dixon and Plaintiff's prescription for the extra blanket. (Ex. D at 5, Docket Entry 59-4.)

[6] At the time the blanket was seized, Plaintiff had possessed it for slightly over two months. (*See* Third. Am. Compl. ¶¶ 45, 67, 70.)

14

the Court should grant the motion to dismiss with regard to the deliberate indifference claim against Defendant Dixon.

2. Defendants Rancy and Rhoades

Plaintiff argues that Defendants Rancy and Rhoades were deliberately indifferent in failing to medically examine Plaintiff, failing to provide alternative pain relief treatments when Tylenol and Mobic proved ineffective, and failing to further investigate the diagnosis that Plaintiff had torn ligaments in his knee. (Third Am. Compl. ¶¶ 192, 194, 196.) Defendants Rancy and Rhoades saw Plaintiff during appointments, listened to his medical complaints, and Rancy prescribed Plaintiff pain relief medication. (*Id.* ¶¶ 43-46, 139-44.) Defendant Rancy also allegedly misdiagnosed Plaintiff with chronic neurological pain disorder. (*Id.* ¶ 51.) It may well be that their conduct, including their failure to follow up on Plaintiff's earlier diagnosis of knee derangement (*id.* ¶ 34) constitutes medical malpractice but does not constitute deliberate indifference. *Estelle*, 429 U.S. at 107 ("A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment."). Plaintiff's deliberate indifference claims against Defendants Rancy and Rhoades should be dismissed.

3. Defendant Jennings

Plaintiff alleges that Defendant Jennings was deliberately indifferent in providing a system of medical care to Plaintiff when staff ignored his sick call complaints. (Third Am. Compl. ¶¶ 197, 201, 203.) Plaintiff states that he submitted a grievance regarding this issue, as well as his concerns regarding his ineffective pain medication and that Defendant Jennings responded to this grievance. (Third. Am. Compl. ¶¶ 104, 161-62.) However, he does not describe the substance of the response other than to note that "Defendant Jennings failed to

15

consider [the grievance]" and that she stated to Plaintiff "you are on Mobic and Tylenol." (*Id.* ¶ 162.) This statement is contradictory, in that Plaintiff admits that Defendant Jennings responded to the grievance, which indicates that it was considered. Additionally, Plaintiff does not explicitly note how the grievance response was otherwise insufficient or other actions that Defendant Jennings took. This is insufficient to state a claim. Otherwise, Plaintiff only conclusively states that Defendant Jennings failed to ensure that Plaintiff received proper medical care. (*Id.* ¶ 197, 201, 203.) Such conclusory statements do not state a claim. *See Twombly*, 550 U.S. at 561. The deliberate indifference claims against Defendant Jennings should be dismissed.[7]

4. Defendant Correct Care Solutions

Plaintiff argues that Defendant Correct Care Solutions was deliberately indifferent in providing a system of medical care to Plaintiff when staff ignored his sick call complaints. Plaintiff also alleges that Defendant Correct Care Solutions "failed to supervise, monitor, manage, and control [its] medical staff" resulting in the sick calls being unheeded.[8] (*Id.* ¶ 202.) "[A] private corporation is liable under § 1983 *only* when an official policy or custom of the corporation causes the alleged deprivation of federal rights." *Austin v. Paramount Parks, Inc.*,

---

[7] To the extent that Plaintiff alleges that Defendant Jennings is liable under a theory of supervisory liability, this fails because he does not sufficiently allege that Defendant Jennings' response to her knowledge of Plaintiff's medical complaints "was so inadequate as to show deliberate indifference to or tacit authorization of the offensive practices." *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks omitted).

[8] Plaintiff also argues that Defendant Correct Care Solutions was deliberately indifferent for the same reasons as Defendants Rancy and Rhoades. (Third Am. Compl. ¶¶ 192, 194, 195, 196.) This argument fails for the same reasons the claims against Defendant Rancy and Rhoades fail. Additionally, to the extent that Plaintiff alleges Defendant Correct Care Solutions is liable under a theory of supervisory liability, this fails for the same reason the similar claim against Defendant Jennings fails.

16

195 F.3d 715, 728 (4th Cir. 1999) (emphasis in original). To the extent that Plaintiff alleges the existence of an official policy or custom of the corporation, it is conclusory and the deliberate indifference claims against Defendant Correct Care Solutions should be dismissed. *See Twombly*, 550 U.S. at 561.

## III. CONCLUSION

**IT IS HEREBY RECOMMENDED** that Moving Defendants' Motion to Dismiss (Docket Entry 61) be **GRANTED**.

_____
Joe L. Webster
United States Magistrate Judge

August 31, 2020
Durham, North Carolina