# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JONATHAN TORREY DUNCAN,         )
                                )
                Plaintiff,      )
        v.                      )    1:19CV353
                                )
WILLIAM T. SCHATZMAN, et al.,   )
                                )
                Defendants.     )

## ORDER AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court upon two motions by Plaintiff Jonathan Torrey Duncan: 1) Plaintiff's "Motion for Default Judgement Against Defendants Sabel Caldwell, A. Swallie,[1] [and] Wendy Hogan" (Docket Entry 109); and 2) Plaintiff's motion for leave to amend his complaint (Docket Entry 124). For the following reasons, the undersigned will deny Plaintiff's motion for default judgment and recommend that his motion for leave to amend his complaint be denied.

## I. BACKGROUND

On March 29, 2019 Plaintiff initiated this action pursuant to 42 U.S.C. § 1983 against twenty Defendants, alleging denial of medical treatment while he was a pretrial detainee at the Forsyth County Law Enforcement and Detention Center ("FCLEDC"). (*See generally*

---

[1] The correct full names of these parties are Sabre Caldwell and April Hogan. (*See* Docket Entry 131 at 1.) The undersigned will refer to them herein by last name.

1

Complaint ("Compl."), Docket Entry 1.) Defendants include prison officials and medical care providers allegedly employed by Defendant Correct Care Solutions, LLC ("CCS").[2] (*Id.*)

On June 3, 2019, Plaintiff filed a motion to amend his complaint. (Docket Entry 16.) The Court granted Plaintiff's motion on August 7, 2019. (Docket Entries 37, 38.) On July 3, 2019, Plaintiff filed a Second Amended Complaint without seeking the Court's leave. (Docket Entries 32, 32-1.) On August 12, 2019, Plaintiff filed a motion for leave to file his Third Amended Complaint. (Docket Entry 44.) On October 15, 2019 the Court struck Plaintiff's Second Amended Complaint from the record but granted his motion for leave to file his Third Amended Complaint, making the Third Amended Complaint the operative pleading in this case. (Docket Entry 58.) On February 10, 2021, Plaintiff filed his foregoing motion for leave to amend his complaint for a fourth time.[3] (Docket Entry 124.) Defendants K. Adams, Carter, Caldwell, Hogan, K. Turpin, and Twonda White have filed responses in opposition to Plaintiff's motion for leave to amend. (Docket Entries 125, 127.) Plaintiff filed a memorandum of law in support of his motion. (Docket Entry 128.)

Regarding Plaintiff's efforts to serve his pleadings, on May 6, 2019, summonses and copies of the initial complaint were issued to all named Defendants. (Docket Entry 6.) Relevant to Plaintiff's motion for default judgment against Defendants Caldwell, Hogan, and Swallie (who Plaintiff identified as medical staff employed by CCS (*see* Compl. at 5-7)),

---

[2] Defendant Correct Care Solutions, LLC is listed on the docket as Wells Path, LLC. (See Docket Entry 61.) However, the Court refers to this Defendant as Correct Care Solutions ("CCS") to reflect how the party has referred to itself in its own filings. (*See, e.g.,* Docket Entries 61, 62.)

[3] Along with his motion for leave to amend, Plaintiff filed a proposed "Fifth Amended Complaint." (Docket Entry 124-1.) For the sake of continuity with Plaintiff's motion, this recommendation will refer to it as such, however, the undersigned notes that there is not a fourth amended complaint on the docket.

2

summonses issued to these three Defendants were returned unexecuted on May 22, 2019 by the U.S. Marshal Service after an unsuccessful attempt to serve them at FCLEDC. (Docket Entries 9-6, 9-7, 9-8.) In the "Remarks" section of these returns, the U.S. Marshals Service noted that according to a jail official, Defendants Caldwell, Hogan, and Swallie were no longer employed by CCS. (*Id.*) Pursuant to the Court's August 7, 2019 Order granting Plaintiff's motion to amend his complaint for the first time, the Court gave Plaintiff an opportunity to amend the summonses that had previously been returned unexecuted as to Defendants Caldwell, Hogan, and Swallie so that the U.S. Marshal Service could serve the First Amended Complaint upon them. (Docket Entry 37 at 4.) On September 13, 2019, summonses were reissued to these three Defendants bearing the address of the registered agent of CCS in Charlotte, North Carolina. (Docket Entry 54.) These summonses were returned executed. (*See* Docket Entry 56-4, 56-6, 56-7.) The returns indicate that the summonses were served via certified mail on September 23, 2019 and that the return receipts were signed by an individual named Jane Estes. (*Id.*) On October 8, 2019, summonses "for service of the First Amended Complaint" were again issued to Defendants Caldwell, Hogan, and Swallie, this time bearing an address for CCS in Nashville, Tennessee. (Docket Entry 57.) These summonses were returned unexecuted on November 1, 2019. (Docket Entry 63.) The U.S. Marshals Service noted that the office where service was attempted refused to accept service for employees. (*Id.*) The docket does not reflect that summonses were ever issued for the service of the Third Amended Complaint upon Defendants Caldwell, Hogan, and Swallie.

Defendants Caldwell, Hogan, and Swallie did not answer or otherwise respond to any version of Plaintiff's complaint. As such, Plaintiff filed his motion for default judgement

3

against these three Defendants on January 13, 2021. (Docket Entry 109.) Defendants filed a response in opposition to the motion. (Docket Entry 112.) Plaintiff thereafter filed a reply. (Docket Entry 123.)

Plaintiff's two pending motions came before the undersigned for a telephone hearing on March 17, 2021. (Minute entry dated 03/17/2021.) Plaintiff was not present at the hearing, despite multiple attempts by the Clerk of Court to reach him.[4] The undersigned took the two motions under advisement. (*Id.*) Following the hearing, the undersigned instructed counsel for Defendants Caldwell, Hogan, and Swallie to supplement their response in opposition to Plaintiff's motion for default judgment because the signed return receipts from Plaintiff's attempt to serve them on September 23, 2019 had not been previously available on the docket. On March 22, 2021, Defendants supplemented their response, which includes an affidavit by CCS claims manager Rachel Eckhardt. (*See* Docket Entry 131; Rachel Eckhardt Affidavit, Docket Entry 131-1.) Plaintiff was given an opportunity to respond to Defendants' supplement (*see* minute entry dated 03/17/2021) but did not file any response.

## II. DISCUSSION

### A. **Plaintiff's "Motion for Default Judgement"**

Plaintiff's motion seeks a default judgment against Defendants Caldwell, Hogan, and Swallie. (Docket Entry 109.) However, prior to obtaining a default judgment under Rule

---

[4] The Clerk of Court attempted to reach Plaintiff on March 9, 2021 via his phone number on file with the Court to notify him about the hearing scheduled for March 17, 2021. Plaintiff's phone did not accept incoming calls at that time. On that same day, the Clerk of Court sent a hearing notice to Plaintiff's mailing address on file with the Court. The Clerk of Court attempted to reach Plaintiff again via telephone on the morning of the hearing (March 17, 2021), but his phone number still would not accept incoming calls.

4

55(b) of the Federal Rules of Civil Procedure, a party must have been granted an entry of default under Rule 55(a). Because Plaintiff has not previously obtained an entry of default against Defendants, the Court construes his motion as a motion for entry of default. *See, e.g., Clark v. Britt*, No. 1:18CV493, 2021 WL 681239, at *14 (M.D.N.C. Feb. 22, 2021) ("The entry of default is a procedural prerequisite to a default judgment . . . . The Court will therefore construe Plaintiff's first Motion for Default Judgment as a request for entry of default."). Entry of default is appropriate where "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). However, "[a]bsent waiver or consent, a failure to obtain proper service on the defendant deprives the court of personal jurisdiction over the defendant." *Koehler v. Dodwell,* 152 F.3d 304, 306 (4th Cir. 1998). In other words, "[i]t is axiomatic that service of process must be effective under the Federal Rules of Civil Procedure before a default or a default judgment may be entered against a defendant." *Maryland State Firemen's Ass'n v. Chaves*, 166 F.R.D. 353, 354 (D. Md. 1996); *see also Ultimate Home Protector Pans, Inc. v. Camco Mfg., Inc.,* No. 1:19CV280, 2020 WL 4938344, at *1 (M.D.N.C. Aug. 24, 2020) ("The party moving for default judgment must still show that the defaulted party was properly served.").

Rule 4(e) allows an individual defendant to be served by delivering a summons to the individual personally, leaving a copy at the defendant's dwelling with a competent resident therein, or by delivering a copy to an agent authorized to receive service of process. Fed. R. Civ. P. 4(e). Rule 4(e) also permits service of an individual according to the law of the state "where the district court is located or where service is made." *Id.* North Carolina law permits service by mailing copies of the summons and complaint via "registered or certified mail,

5

Case 1:19-cv-00353-CCE-JLW   Document 138   Filed 04/16/21   Page 5 of 15

return receipt requested, addressed to the party to be served, and delivering to the addressee." N.C. Gen. Stat. § 1A-1, Rule 4(j)(1)(c); *see also Ferebee v. Excel Staffing Serv., Inc.*, No. 2:16-CV-8-BO, 2016 WL 7165752, at *3 (E.D.N.C. Dec. 7, 2016). Furthermore, "[s]ervice of process can be effected by mailing the summons and complaint to a defendant's place of employment." *Diede v. UNC Healthcare*, No. 5:16-CV-00788-BR, 2018 WL 3448219, at *2 (E.D.N.C. July 17, 2018) (citing *Moore v. Cox*, 341 F. Supp. 2d 570, 573 (M.D.N.C. 2004)). However,"[s]ervice of process cannot be effected upon [d]efendant by serving at his place of employment individuals who are not authorized to accept service of process." *Elkins v. Broome*, 213 F.R.D. 273, 276 (M.D.N.C. 2003) (citations omitted).

When a certified mail return receipt is "signed by a person other than the addressee, North Carolina [law] presumes 'that the person who received the mail . . . and signed the receipt was an agent of the addressee authorized by appointment or by law to be served or to accept service of process.'" *Godfrey v. Long*, No. 5:10-CT-3105-BO, 2012 WL 43593, at *5 (E.D.N.C. Jan. 9, 2012), *aff'd*, 472 F. App'x 174 (4th Cir. 2012) (quoting N.C. Gen. Stat. § 1A–1, Rule 4(j2)(2)) (ellipsis in original). However, a defendant may rebut the presumption of proper service by submitting affidavits to the court "showing unequivocally that proper service was not made upon the person of the defendant." *Stollard v. Gwynn*, No. 1:19CV926, 2021 WL 620706, at *6 (M.D.N.C. Feb. 17, 2021) (citations omitted).

Here the Court finds that entry of default is not appropriate because Defendants have not been properly served. Plaintiff made three attempts to serve Defendants, but only one attempt was returned executed by the U.S. Marshals Service. (*See* Docket Entry 56.) Copies of summonses and the first amended complaint were delivered via certified mail to Defendants

6

on September 23, 2019 at the address of the registered agent of CCS in Charlotte, North Carolina. (*Id.*) An individual named Jane Estes signed the return receipts. (*Id.*) While the signed return receipts raise a presumption of proper service, Defendants have rebutted this presumption by submitting an affidavit by CCS claims manager Rachel Eckhardt. (*See* Eckhardt Aff., Docket Entry 131-1.) In her affidavit, Ms. Eckhardt states that Defendants Caldwell, Swallie, and Hogan were no longer employed by CCS when Plaintiff attempted to serve them via the CCS registered agent in September 2019. (*Id.*) In fact, according to Ms. Eckhardt, Defendant Caldwell was not employed by CCS as of January 2017, Defendant Swallie was not employed by CCS as of March 2018, and Defendant Hogan was not employed by CCS as of November 2016. (*Id.* ¶¶ 2-4.) Furthermore, Ms. Eckhardt stated that the registered agent for CCS "is not authorized to accept service on behalf of individual employees." (*Id.* ¶ 5.)

In addition, the record reflects that no attempt was made to serve Defendants with a copy of the operative Third Amended Complaint. "[A] properly filed amended complaint supersedes the original one and becomes the operative complaint in the case, [rendering] the original complaint of no effect." *Fawzy v. Wauquiez Boats SNC,* 873 F.3d 451, 455 (4th Cir. 2017) (internal quotations omitted). District courts have explicitly held that a defendant must have been served with the operative complaint for an entry of default or default judgment to be properly granted. *See Styles v. McDonalds Rest.,* No. 4:17-CV-791-ALM CAN, 2019 WL 2266636, at *3 (E.D. Tex. Jan. 28, 2019), *report and recommendation adopted*, No. 4:17-CV-791, 2019 WL 1219117 (E.D. Tex. Mar. 15, 2019) ("[A] plaintiff seeking default judgment on an amended complaint must first demonstrate proper service of the operative complaint.") (citing

7

*Bricklayers & Allied Craftworkers Loc. Union No. 3 v. Palomino*, 2010 WL 2219595, at *3 n.6 (N.D. Cal. June 2, 2010)); *Arnold v. Farmers Ins. Exch.*, No. 18-CV-02982-KAW, 2018 WL 3777136, at *2 (N.D. Cal. Aug. 9, 2018) ("The Court finds that entry of default is not appropriate because Plaintiff has failed to serve the second amended complaint—the operative complaint—on Defendant . . . the fact that Plaintiff had served the first amended complaint is insufficient to support entry of default; Plaintiff must serve the operative complaint on Defendant . . . before default can be entered."). Therefore, even if service of Plaintiff's First Amended Complaint had been proper on Defendants, such service would still be insufficient because Plaintiff has filed a superseding Third Amended Complaint that has not been served.

Accordingly, entry of default against Defendants Swallie, Caldwell, and Hogan is not warranted. *Gallant v. Deutsche Bank Nat. Tr. Co.*, No. CIVA 3:10CV00006, 2010 WL 1540053, at *2 (W.D. Va. Apr. 16, 2010) (unpublished) ("Because the defendant has not been properly served with process, the plaintiff's motion for entry of default must be denied."). Plaintiff's motion will therefore be denied.

**B. Plaintiff's Motion for Leave to Amend**

Plaintiff's motion seeks to amend his complaint for the fourth time since the initiation of this lawsuit. (Docket Entry 124.) Plaintiff's stated reasons for seeking leave to amend are to allege waiver of immunity and to address Rule 9(j) certification, which is required by North Carolina law for all claims involving medical malpractice. (*Id.*) Plaintiff's proposed Fifth Amended Complaint also includes new Defendants, namely Sheriff Bobby Kimbrough, Jr., and John Doe Surety. (*See* 5th Prop. Am Compl. ¶¶ 4, 9-10, Docket Entry 124-1.)

8

Rule 15(a) of the Federal Rules of Civil Procedure provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Rule 15(a) further states that "[t]he court should freely give leave when justice so requires." *Id.* Granting a motion to amend a complaint is within the discretion of the Court, "but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Fourth Circuit has stated that "[a] district court may deny a motion to amend when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile." *Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010). An amended complaint is futile if it cannot withstand a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6); thus, the Court may deny the motion. *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995) (addition of negligence claim was futile because case would not survive motion to dismiss).

As an initial matter, the undersigned notes that the substitution of Sheriff Kimbrough is appropriate pursuant to Federal Rule of Civil Procedure 25 rather than Rule 15. In his reply, Plaintiff states that Defendant Schatzman is no longer the Sheriff of Forsyth County, thus he seeks to add Bobby Kimbrough, the current officeholder. (Docket Entry 128 at 3.) Rule 25(d) provides for the automatic substitution of a public officer's successor when the original public officer "ceases to hold office while the action is pending." Fed. R. Civ. P. 25(d).[5] This rule applies to official capacity claims raised against sheriffs. *See King v. McMillan*, No. CIVA

---

[5] Because substitutions pursuant to Rule 25(d) are automatic, they are not susceptible to the Rule 15 futility analysis. *See Mobley v. Underwood,* No. CV 0:19-3223-JFA-SVH, 2021 WL 694844, at *3 (D.S.C. Feb. 23, 2021).

7:05CV00521, 2006 WL 2126279, at *1-2 (W.D. Va. July 28, 2006). As the Supreme Court has recently clarified:

> In an official-capacity claim, the relief sought is only nominally against the official and in fact is against the official's office and thus the sovereign itself. This is why, when officials sued in their official capacities leave office, their successors automatically assume their role in the litigation. The real party in interest is the government entity, not the named official.

*Lewis v. Clarke*, 137 S. Ct. 1285, 1291 (2017) (internal citations omitted). Thus, Sheriff Kimbrough should be substituted for Defendant Schatzman to the extent that Plaintiff has raised official capacity claims against the Sheriff of Forsyth County.[6] (*See* Third Am. Compl. ¶¶ 4, 27 (naming Defendant Schatzman as the duly elected Sheriff of Forsyth County and stating that "[a]ll defendants are being sued in their individual and official capacities").) Therefore, the undersigned will order the Clerk of Court to issue a summons addressed to Sheriff Kimbrough so that he may be served with the operative Third Amended Complaint.[7]

Regarding Plaintiff's other proposed amendments, Defendants K. Adams and Carter have objected to Plaintiff's motion on the grounds that Plaintiff's "request for leave at this late stage constitutes an unreasonable delay and is prejudicial to Defendants." (Docket Entry 125 at 6.) Similarly, Defendants Caldwell, Hogan, Swallie, Turpin, and White assert in their response in opposition to Plaintiff's motion that his "request to allow yet another amended

---

[6] This substitution has no effect on the claims Plaintiff has raised against Defendant Schatzman in his individual capacity. *See Mobley*, 2021 WL 694844, at *3 (applying Rule 25(d) to retain former sheriff as a defendant in the case, but only in his individual capacity, and to add current sheriff in his official capacity only).

[7] Service upon Sheriff Kimbrough is appropriate because the summons originally issued to Defendant Schatzman as the Sheriff of Forsyth County was returned unexecuted. (*See* Docket Entry 9.) Service upon Defendant Schatzman for Plaintiff's claims against him in his individual capacity has been ordered but remains pending. (*See* Text Order dated 01/26/2021.)

complaint is made in bad faith, is futile, and that allowing such amendment would be prejudicial to all defendants and remaining unserved individuals named in Plaintiff's various pleadings." (Docket Entry 127 at 5.)

The undersigned agrees that allowing Plaintiff to file yet another amended pleading is not warranted. First, regarding Plaintiff's efforts to allege waiver of immunity and add John Doe Surety, Defendants K. Adams and Carter point out that they raised the affirmative defenses of public officer immunity, qualified immunity, and governmental immunity in their answer to Plaintiff's original complaint, which they filed on June 14, 2019. (Docket Entry 125 at 6 (referencing Docket Entry 26 at 26-27).) Therefore, Plaintiff was on notice that he needed to allege waiver of immunity as of that date. Defendants K. Adams and Carter raised immunity defenses again in their answer to Plaintiff's First Amended Complaint, which was filed on August 8, 2019. (Docket Entry 40 at 31-32.) Nevertheless, Plaintiff did not address wavier of immunity in his proposed Third Amended Complaint, which was filed on August 12, 2019. (*See* Docket Entry 44.) In other words, Plaintiff was given an opportunity to cure deficiencies identified by Defendants in a previously allowed amendment, but he failed to do so. *See Foman,* 371 U.S. at 182 (listing "repeated failure to cure deficiencies by amendments previously allowed" as a proper reason for denying leave to amend)

Third, Plaintiff's proposed amendments regarding Rule 9(j) certification are futile. In North Carolina, a plaintiff alleging medical malpractice must comply with North Carolina Rule of Civil Procedure 9(j), which requires a plaintiff to include in his complaint an assertion that that an expert reviewed the medical care at issue and is willing to testify that the medical care did not comply with the applicable standard of care. *See* N.C. R. Civ. P. 9(j). Failure to comply

11

with Rule 9(j) is grounds for dismissal. *See Littlepaige*, 528 Fed. App'x at 292; *Boula v. United States*, 1:11cv366, 2013 WL 5962935, at *2 (M.D.N.C. Nov. 7, 2013); *Moore v. Pitt Cnty Mem. Hosp.*, 139 F. Supp. 2d 712, 713-14 (E.D.N.C.2001).

The only exception to this rule is where "[t]he pleading alleges facts establishing negligence under the existing common-law doctrine of *res ipsa loquitur*." N.C. R. Civ. P. 9(j)(3). "The doctrine of *res ipsa loquitor* applies when (1) direct proof of the cause of an injury is not available, (2) the instrumentality involved in the accident is under the defendant's control, and (3) the injury is of a type that does not ordinarily occur in the absence of some negligent act or omission." *Alston v. Granville Health Sys.*, 727 S.E.2d 877, 879 (N.C. Ct. App. 2012) (citation omitted); *see also Muhammad v. United States*, No. 5:11–CT–3126–FL, 2012 WL 3957473, at *6 (E.D.N.C. Sept. 10, 2012). In other words, "the doctrine of *res ipsa loquitur* . . . permits a fact finder 'to infer negligence from the mere occurrence of the accident itself' based on common knowledge or experience." *Wright v. United States*, 280 F. Supp. 2d 472, 481 (M.D.N.C. 2003) (quoting *Diehl v. Koffer*, 140 N.C. App. 375, 378, 536 S.E.2d 359, 362 (2000)).

In the medical context, *res ipsa loquitor* "extends only to 'medical malpractice actions in which the common knowledge, experience and sense of laymen qualifies them to conclude that some medical injuries are not likely to occur if proper care and skill is used.'" *Harris v. Poole*, No. 1:18CV378, 2019 WL 1584978, at *4 (M.D.N.C. Apr. 12, 2019), *report and recommendation adopted*, No. 1:18-CV-378, 2019 WL 2994462 (M.D.N.C. July 9, 2019) (quoting *Wright*, 280 F. Supp. 2d at 482) (internal quotations omitted). Thus, "[t]he doctrine rarely applies in medical malpractice actions." *Wood v. United States*, 209 F. Supp. 3d 835, 845 (M.D.N.C. 2016); *see also Wright*, 280 F. Supp. 2d at 481 ("North Carolina courts have applied

*res ipsa* to injuries involving gross negligence, such as surgical instruments left in the patient's body." Moreover, "when a plaintiff 'asserts in his pleading' that his injuries were caused directly by the failure of medical personnel to provide adequate care, the doctrine of *res ipsa loquitur* does not apply." *Lauer v. United States*, No. 1:12CV41, 2013 WL 566124, at *5 (W.D.N.C. Feb. 13, 2013) (quoting *Alston v. Granville Health Sys.*, 727 S.E.2d 877, 880 (N.C. Ct. App. 2012)).

In his proposed Fifth Amended Complaint, Plaintiff first objects to the requirements of Rule 9(j), asserting that the rule denies him of due process and his rights to equal protection, access to the courts, and a jury trial in violation of the United States Constitution and the North Carolina Constitution. (Docket Entry 124-1 at 28.) Plaintiff cites no authority in support of this argument, and similar arguments by other plaintiffs have failed. *See, e.g., Smith v. United States,* No. 1:10CV112, 2011 WL 4899933, at *17 (M.D.N.C. Oct. 14, 2011); *Baker v. United States*, No. 5:11-CT-3070-D, 2013 WL 211254, at *6 (E.D.N.C. Jan. 18, 2013) ("Baker asserts that Rule 9(j) violate[s] fundamental [constitutional] rights of access to the courts; due process, and equal protection under law . . . . Baker's argument fails.") (internal quotations omitted).

After raising this objection, Plaintiff then states in his proposed amended complaint that he has complied with the requirements of Rule 9(j) by alleging facts sufficient to establish negligence under *res ipsa loquitor*. (Docket Entry 124-1 at 28.) However, in his pleadings, Plaintiff alleges that the medical Defendants directly harmed him by failing to provide adequate medical care and treatment. (*See* Compl. 30-36.) Further, the undersigned finds that Plaintiff's medical malpractice claims are not so based in common knowledge that a lay person

13

would be able to assess them. Thus, *res ipsa loquitor* does not extend to Plaintiff's claims and his proposed amendments regarding Rule 9(j) should be denied as futile. *See Harris*, 2019 WL 1584978, at *4 (dismissing plaintiff's medical malpractice claim where "[a] layperson's frame of reference does not provide an adequate basis for assessing" plaintiff's claim that a doctor "failed to properly treat a leg injury" and plaintiff failed to produce the required Rule 9(j) certification); *Seelig v. Perry*, No. 1:16CV1166, 2017 WL 5006427, at *5 (M.D.N.C. Oct. 30, 2017) (dismissing plaintiff's medical malpractice claim where plaintiff failed to comply with the certification requirements of Rule 9(j) and the *res ipsa loquitor* exception did not apply because plaintiff "argues that his personal injuries were directly caused by inadequate medical care received").

Finally, in general, allowing Plaintiff to amend his complaint yet again at this late stage in the litigation will be prejudicial to all Defendants. Plaintiff initiated this action in March 2019. The deadline for the completion of discovery was April 14, 2021, with dispositive motions due on May 14, 2021. Any further amendment to Plaintiff's complaint will cause significant delay in this case's progress towards resolution. For these reasons, the undersigned recommends denying Plaintiff's motion for leave to amend.

### III. CONCLUSION

For the reasons stated herein, **IT IS HEREBY ORDERED** that Plaintiff's "Motion for Default Judgement Against Defendants Sabel Caldwell, A. Swallie, [and] Wendy Hogan" (Docket Entry 109), construed as a motion for entry of default, is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue a summons to Sheriff Bobby Kimbrough, Jr. at 301 North Church Street, Winston-Salem, NC 27101.[8]

**IT IS FURTHER ORDERED** that the United States Marshal shall immediately serve the Third Amended Complaint (Docket Entry 59) on Sheriff Kimbrough.

**IT IS RECOMMENDED** that Plaintiff's Motion for Leave to Amend Complaint (Docket Entry 124) be **DENIED.**

_____
Joe L. Webster
United States Magistrate Judge

April 16, 2021
Durham, North Carolina

---

[8] Alternatively, because counsel for the Forsyth County Attorney's Office is actively representing other Defendants in this case, counsel may obtain authorization from Sheriff Kimbrough to accept service of process on his behalf, or Sheriff Kimbrough himself may elect to waive service of process.